RATTET, PASTERNAK & GORDON OLIVER, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

JONATHAN S. PASTERNAK (JP-6107)
DAWN K. ARNOLD (DA-0642)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:      Chapter 11
    Case No. 07-11510 (JMP)

La Guardia Tavern Corp.
d/b/a Society
d/b/a Newgate Bar and Grill,

                 Debtor.

Tax ID: 20-0850497
-------------------------------------------------------------X

**APPLICATION FOR ORDER SEEKING AUTHORITY (A) TO USE CASH COLLATERAL PURSUANT TO BANKRUPTCY CODE SECTION 363(c)(2) AND (B) TO APPROVE ADEQUATE PROTECTION FOR THE USE OF CASH COLLATERAL**

TO:    THE HONORABLE JAMES M. PECK,
        UNITED STATES BANKRUPTCY JUDGE:

The Application of the above captioned debtor and debtor-in-possession, La Guardia Tavern Corp, (the "Debtor"), by its attorneys, Rattet, Pasternak & Gordon Oliver, LLP, respectfully represent and set forth as follows:

**BACKGROUND**

1. On or about May 17, 2007, (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Code").

2. The Debtor is in the business of owing and operating a restaurant and bar (the

"Restaurant") located at 535 LaGuardia Place, New York, New York. The restaurant provides a casual eating environment in the New York University area, with both indoor and outdoor café seating.

3. The Debtor has continued in possession of its business and management of its property pursuant to Sections 1107 and 1108 thereof.

4. No Trustee, examiner or Creditors' Committee has been appointed in this proceeding.

5. The Debtor was forced to file for Chapter 11 due to an ongoing dispute with the Debtor's landlord involving the landlord's failure to cooperate on the Debtor's claim for damages incurred in 2006 when the landlord's contractor, while replacing the roof to the building, left only a tarp on the roof during a significant storm. Many of the Debtor's substantial renovations to the Restaurant were ruined, requiring a re-investment of tens of thousands of dollars. Although the landlord initially seemed to be cooperating with the Debtor to ascertain and pay the claim, the landlord has thus far failed to reimburse any portion of the Debtor's damages. Rather, the landlord embroiled the Debtor in litigation over whether the Restaurant is being used primarily as a restaurant or instead a bar, an allegation that the Debtor utterly disputes. The Debtor was granted a "Yellowstone Injunction" against the landlord, but was ultimately unable to pay current rent due to a combination of factors, the most significant of which is the additional costs incurred after the landlord's contractor's tarp failed to keep a significant storm from sending water throughout the premises.

6. With the assistance of this Court, the Debtor is confident that it will be able to efficiently workout its debts, collect on its claims, and maximize the value of the business. It is

"Restaurant") located at 535 LaGuardia Place, New York, New York. The restaurant provides a casual eating environment in the New York University area, with both indoor and outdoor café seating.

3. The Debtor has continued in possession of its business and management of its property pursuant to Sections 1107 and 1108 thereof.

4. No Trustee, examiner or Creditors' Committee has been appointed in this proceeding.

5. The Debtor was forced to file for Chapter 11 due to an ongoing dispute with the Debtor's landlord involving the landlord's failure to cooperate on the Debtor's claim for damages incurred in 2006 when the landlord's contractor, while replacing the roof to the building, left only a tarp on the roof during a significant storm. Many of the Debtor's substantial renovations to the Restaurant were ruined, requiring a re-investment of tens of thousands of dollars. Although the landlord initially seemed to be cooperating with the Debtor to ascertain and pay the claim, the landlord has thus far failed to reimburse any portion of the Debtor's damages. Rather, the landlord embroiled the Debtor in litigation over whether the Restaurant is being used primarily as a restaurant or instead a bar, an allegation that the Debtor utterly disputes. The Debtor was granted a "Yellowstone Injunction" against the landlord, but was ultimately unable to pay current rent due to a combination of factors, the most significant of which is the additional costs incurred after the landlord's contractor's tarp failed to keep a significant storm from sending water throughout the premises.

6. With the assistance of this Court, the Debtor is confident that it will be able to efficiently workout its debts, collect on its claims, and maximize the value of the business. It is

the Debtor's goal to either continue in operation through the end term of its lease.

7. The Debtor has been unable to locate any of its loan documents with M&T Bank ("M&T"), but believes M&T has a secured interest in all of the Debtor's assets with respect to a revolving line of credit in the outstanding amount of $25,000.00 and a term loan in the outstanding amount of $47,000.00 (the "Loans"). The Debtor believes that monthly payments on Loans are current. The Debtor believes that in connection with the Loans, M&T filed a UCC Financing Statement on April 2, 2004, filing number 404025261960.

8. The Debtor was unaware, but recently discovered, that a NYS tax lien in the amount of $14,898.00 was apparently filed on April 10, 2007, filing number 2256560.

9. Counsel for the Debtor has been in contact with M&T which, as of date, is attempting to ascertain whether it continues to hold the Loans.

## RELIEF SOUGHT

10. The Debtor submits this Application pursuant to §363(c)(2)(B) and 361 of the Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with respect to the Debtor's request for authority to use property which may constitute cash collateral in which M&T has asserted a secured interest in said cash collateral, substantially in accordance with the terms and conditions as set forth in the (a) proposed Interim Stipulation and Order For Use of Cash Collateral and Adequate Protection of Liens attached hereto as Exhibit "A". The proposed Interim Stipulation and Order grants the Debtor the authority to use cash collateral pursuant to 11 U.S.C. §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent that the Debtor seeks authority to continue the operation of its business and to preserve the value of its estate pending a final hearing.

12. Section 363(a) of the Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

13. Section 363(c)(1) of the Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

14. Section 363(d) of the Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

## **THE NOTE AND LINE OF CREDIT**

15. The Debtor has been unable to locate its loan documents, and M&T has thus far been unable to confirm the loan and security agreement. However, the Debtor believes that on or about April 2, 2004, M&T entered into a Loan Agreement with the Debtor, which the Debtor believes to consist of (i) a the Revolving Line of Credit Note in the amount of $25,000.00 and (ii) a term loan in the outstanding amount of $47,000.00.

16. The Debtor believes that on or about the same date, the Debtor and M&T entered into a security agreement wherein the Debtor pledged its personal property as security for the Loan Agreements.

17. As of the Filing Date, the Debtor was indebted to M&T under the Loan Documents in the aggregate principal amount of approximately $72,000.00. The Prepetition Obligations include:

    a. Revolving Loan made under the Loan Documents in the outstanding principal amount of $25,000.00; and

    b. Term Loan made under the Loan Documents in the outstanding principal amount of $47,000.00.

18. As of the date of this Application, the Debtor is current in all of its debt servicing obligations to M&T.

19. Upon information and belief, M&T holds a perfected first priority security interest in all of the Debtor's personal property pursuant to the security agreement, and the Debtor believes that M&T is currently the only secured creditor of the estate.

20. Accordingly, pursuant to Section 363(c)(2) of the Code, the consent of M&T or authority from this Court is required to use cash collateral in which M&T holds a perfected, first priority interest.

21. In consideration for the use of cash collateral and other collateral in accordance with the proposed Interim Order, the Debtor and M&T have agreed that the Debtor shall grant M&T a replacement lien in all of the Debtor's pre-petition and post-petition personal property other than proceeds from the estate's causes of action under Sections 542-553 of the Code, to the

extent that M&T had a valid security interest in its pre-petition assets and in the continuing order of priority that existed as of the Filing Date. Said replacement lien shall be subject to (a) fees payable under 28 U.S.C. §1930, (b) Chapter 11 professional fees as may be awarded under Sections 330 or 331 of the Bankruptcy Code and (c) fees for a hypothetical chapter 7 trustee, not to exceed $10,000, as set forth in the proposed Interim Order.

22. The Debtor hopes to negotiate a final stipulation with M&T to be completed in time to submit a final stipulation for the use of cash collateral. These negotiations contemplate continued debt servicing under the terms of their current agreement. The parties hope to finalize and submit a Final Stipulation for Use of Cash Collateral and Adequate Protection of Liens at the Final Hearing on the Use of Cash Collateral.

23. The Debtor proposes to make continued monthly debt service payments to the M&T, as adequate protection for its secured interest in the Debtor's assets.

24. The Debtor submits that, in order to preserve the status quo, M&T should be granted a replacement lien to the extent of the validity of its lien, with the nature, extent and validity of said lien to be subject to investigation by any creditors or committee appointed in the Debtor's Chapter 11 case.

## GENERAL REQUEST FOR AUTHORITY TO USE CASH COLLATERAL

25. The immediate and continued use of cash collateral is essential to the operation of the Debtor's business, and will not only preserve the estate but will help to maximize its value for the benefit of its creditors.

26. Without the immediate use of cash collateral, the Debtor will not be able to make payroll and sustain its operations.

27. The Debtor therefore desires to obtain authority to use cash collateral of M&T pursuant to and in accordance with the proposed Interim Stipulation and Order annexed hereto as Exhibit "A" and to be presented for signature and entry at the Preliminary Hearing.

28. The proposed Interim Stipulation and Order, annexed hereto as Exhibit "A" expressly provides that in consideration for the use of cash collateral and other collateral of M&T the Debtor shall (1) grant M&T a replacement lien in all of the Debtor's pre-petition and post-petition personal property, to the extent that M&T had a valid security interest in the Debtor's pre-petition assets and in the continuing order of priority that existed as of the Filing Date, and subject to the United States Trustee and the carveouts as set forth in the proposed Interim Stipulation Order, and (2) continue monthly debt service payments to M&T in accordance with the existing loan agreement as adequate protection of its secured interest.

29. The Debtor proposes to use cash collateral for ordinary and necessary operating expenses substantially in accordance with the operating Budget annexed hereto as Exhibit "B" (the "Budget").

30. The operating Budget provides for the continuation of payment of only necessary, essential and ordinary course of business operating expenses.

31. The Debtor submits that its request for use of cash collateral herein is reasonable, proper and in the best interests of its creditors. Furthermore, the granting of the Debtor's request substantially in accordance with the terms and conditions of the proposed Interim Stipulation and Order and ultimately a final Stipulation and Order will increase the likelihood that Debtor will be reorganized pursuant to Chapter 11 of the Code.

32. This Application is being served on notice to all parties asserting secured claims against the Debtor, and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), although the Debtor believes that M&T is the only party who may assert an interest in cash collateral that constitutes property of the Estate.

33. Fed. R. Bankr. P. 4001(c) provides for an interim hearing for use of cash collateral.

34. Applicant respectfully requests that the Court dispense with the requirement of filing a Memorandum of Law in connection with this Application, in that there are no novel or difficult legal issues presented in connection with this Application and in further light of the case and statutory law presented herein.

**WHEREFORE**, the Debtor respectfully requests entry of the pre-fixed Order, approval and authorization of use of cash collateral pursuant to and in accordance with this Application and the proposed Interim Stipulation Order, together with such other and further relief as is just and proper under the circumstances.

Dated: Harrison, New York
 May 23, 2007

        RATTET, PASTERNAK & GORDON OLIVER, LLP
        Attorneys for the Debtor
        550 Mamaroneck Avenue
        Harrison, New York 10528
        (914) 381-7400

        By: */s/ Jonathan S. Pasternak*
        Jonathan S. Pasternak (6107)