RATTET, PASTERNAK & GORDON OLIVER, LLP
Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

| | |
|---|---|
| JONATHAN S. PASTERNAK (JP-6107) | **Hearing Date: June 28, 2007** |
| DAWN K. ARNOLD (DA-0642) | **Hearing Time: 10:00 a.m.** |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                                          Chapter 11
                                                                                    Case No. 07-11510 (JMP)
La Guardia Tavern Corp.
d/b/a Society
d/b/a Newgate Bar and Grill,

                             Debtor.
-------------------------------------------------------------X

## LA GUARDIA TAVERN CORP.'S OPPOSITION TO THE MOTION OF NEW YORK UNIVERSITY FOR AN ORDER MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1)

**TO:   THE HONORABLE JAMES M. PECK:
           UNITED STATES BANKRUPTCY JUDGE:**

La Guardia Tavern Corp., by its attorneys, Rattet, Pasternak & Gordon Oliver, LLP, in opposition to the motion of New York University (the "Landlord") to modify the automatic stay (the "Motion"), respectfully sets forth as follows:

1.     On May 17, 2007 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code (the "Code"). The Debtor has continued in possession of its property and the management of its business affairs as Debtor-in-possession pursuant to §§1107 and 1108 of the Code. The Debtor is a "small business debtor" as defined by the Code. No official committee of unsecured creditors has been appointed.

1

2. The Debtor operates a sit down restaurant with indoor tables and booths as well as outdoor patio café seating. The restaurant is located in the vibrant Greenwich Village / NYU area just south of Washington Square Park at 535 LaGuardia Place, New York, NY.

3. <u>The Debtor has timely paid post-petition rent</u>. The Debtor has literally bent over backward to try to avoid any problem with post-petition rent. On June 1, 2007, a Bank Check from M&T Bank in the amount of $12,200 was hand delivered to the Landlord's office. The June base rent due is only $11,271.79 pursuant to Lease ¶42. Out of an abundance of caution, the Debtor delivered an additional $928.21 to cover any as-of-yet unbilled additional rent.

4. A copy of the rent receipt was sent to Landlord's counsel on June 5th in an attempt to avoid any confusion, and a request was made to notify Debtor's counsel if there was any discrepancy in the amount paid. Copies of the Debtor's request to clarify any discrepancy, the rent receipt, and Lease ¶42 is attached as **Exhibit A**.

5. The Landlord never notified counsel of any rent discrepancy. However, the Landlord's Motion alleges post-petition arrears in the amount of $6,903.94. (Motion, ¶17). After reviewing the Motion, Debtor's counsel wrote to Landlord's counsel requesting an explanation or accounting of the alleged arrears, but none has been provided. A copy of the request is annexed as **Exhibit B.**

6. It is outrageous that the Landlord did not tell the Debtor about the additional charge or provide an accounting *before* making this Motion. The rent ledger attached to the Motion is of no assistance – it only includes rent charges through April 2006. (Motion, Exhibit F). As far as the Debtor can tell, it is current with post-petition rent.

7. The Landlord misleads this Court when, <u>knowing it accepted a Bank Check on June 1st in the amount of $12,200 for June rent plus an additional $928.21 to cover any as-of-yet unbilled additional rent</u>, it states,

> The Debtor's failure to make regular monthly payments to the [Landlord], and the declining value of the property as a result of the Debtor's continued occupation, results in the [Landlord] not being provided adequate protection… [Motion ¶ 43]
>
> Debtor continues to occupy the Premises without paying its post-petition use and occupancy and/or rental obligations… [Motion, ¶ 51]

8. The Debtor cannot imagine what the substantial additional rent charge could possibly represent, but if it is in fact due, the Debtor is ready, willing and able to pay it. The Landlord's failure to advise this Court that it did receive $12,200, more that the June base rent, is misleading.

9. Accordingly, no grounds exist to modify the automatic stay because the Landlord's interest is adequately protected by timely monthly rent payments.

10. <u>The Debtor is complying with its non-monetary obligations under the Lease</u>. The Debtor operates a 100-seat sit down restaurant, serving items such as grilled filet mignon, garlic mashed potatoes, pan seared salmon, chicken marsala, pastas, salads, soups, chili, various hot appetizers, gourmet sandwiches, and desserts such as apple pie and brownie ala mode. A copy of one of the Debtor's summer menus is annexed as **Exhibit C**.

11. The Debtor and its Landlord, spearheaded by Mr. Richard Landman, have been in a legal dispute since April 2006 concerning vague, unsubstantiated allegations that the restaurant is operating "more as a bar" than a restaurant. In April 2006, the Debtor commenced an action

3

against Mr. Richard Landman and the Landlord in New York County Supreme Court (the "Supreme Court Action") in response to a Notice to Cure. A copy of the Complaint is annexed as **Exhibit D**.

12. The affidavit Robert T. Agnew sworn to on August 16, 2006, submitted in support of the Debtor's request for a Yellowstone Injunction, further describes Mr. Landman's crusade against the Debtor. A copy of the Agnew Affidavit is annexes as **Exhibit E**.

13. Leading up to the Supreme Court Action, the Debtor attempted to assuage Mr. Landman's concerns by investing an additional $100,000 in renovations to make the bar smaller and increase seating capacity, and changed its d/b/a from "Newgate Bar and Grill" to "Society" and changed its business model to appeal to an older demographic, per the Landlord's request.

14. The Debtor continued to attempt to work out a reasonable solution with the Landlord, ultimately to no avail. Settlement was made more difficult by the Landlord's resistance to the Debtor's efforts to recoup damages resulting from a catastrophic flood in April 2006 caused when a temporary roof was not properly installed by the Landlord, causing a substantial flood of rain water into the premises. Copies of letters concerning the damage claim are annexed as **Exhibit F**. The claim remains outstanding.

15. In support of its motion, the Landlord offers a single email from a colleague of Mr. Landman complaining that on <u>one occasion</u> in the post-petition period, June 9, 2007, a Saturday night, the outdoor café was allegedly open until after 11:00 p.m., closing shortly before 1:00 a.m. In fact, the Lease ¶80 permits the Debtor to operate the outdoor café until 1:00 a.m. A copy of Lease ¶80 is annexed as **Exhibit G**. The Landlord also offers several emails, mostly from Richard

Landman himself, dated almost two years ago, which are wholly irrelevant.

16. As set forth in Debtor's Memorandum of Law, the new provisions of BAPCA make clear that the Debtor may assume its lease even if, assuming *arguendo*, it had breached a non-monetary provision pre-petition. Regardless, the Debtor vociferously disputes that it has ever breached its non-monetary obligations under the Lease.

17. The Landlord's motion was brought only a few weeks after the Filing Date. The Debtor should be afforded a reasonable opportunity to formulate a Plan of Reorganization, whether by continuing to operate as a going concern, or by identifying a purchaser for the Debtor's valuable business and leasehold.

18. There are substantial other creditors who stand to lose if the Debtor is denied a chance at reorganization, including secured creditor, M&T Bank, with an approximate claim of $70,000, various secured equipment lessors, tax claimants, approximately 20 unsecured creditors, as well as several investor/shareholders, some of whom have guaranteed various of the Debtor's debts.

19. Accordingly, the Landlord has failed to substantiate grounds to modify the automatic stay. The Landlord's request for an administrative priority (Motion ¶ 50) should also be denied because the Landlord failed to demonstrate any rent due in the post-petition period, or that the Landlord attempted to resolve the matter before bringing this Motion. The Landlord's request for an order compelling payment of post petition rent should likewise be denied (Motion ¶ 53).

20. The Debtor submits that the Landlord's Motion is frivolous and makes statements intended to mislead the Court. Had time permitted for the Debtor to proceed under the 21-day "safe harbor" provisions, the Debtor would have moved for sanctions. Accordingly, the Court should consider awarding the Debtor its costs of defending the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court deny the Landlord's Motion and for other and further relief as is just, proper and equitable under the circumstances.

Dated: Harrison, New York
June 26, 2007

        RATTET, PASTERNAK & GORDON OLIVER, LLP
        Attorneys for the Debtor
        550 Mamaroneck Avenue
        Harrison, New York 10528
        (914) 381-7400

        By: */s/ Dawn K. Arnold*
        Dawn K. Arnold (DKA 0642)